UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1342

MARGARET JONES,

Plaintiff - Appellant,

versus

FORD MOTOR COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Gerald Bruce Lee, District Judge. (CA-03-319)

Argued: September 20, 2006          Decided: October 27, 2006

Before KING and DUNCAN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge King and Senior Judge Hamilton joined.

**ARGUED:** Thomas James Murray, MURRAY & MURRAY, Sandusky, Ohio, for Appellant. Joseph Kelly Reid, III, MCGUIREWOODS, L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:** Mary S. O'Neill, MURRAY & MURRAY, Sandusky, Ohio; Robert T. Hall, Holly Parkhurst Essing, HALL, SICKELS, FREI & KATTENBURG, P.C., Reston, Virginia, for Appellant. Perry W. Miles, IV, MCGUIREWOODS, L.L.P., Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

DUNCAN, Circuit Judge:

In this diversity case, Margaret Jones ("Mrs. Jones" or "Appellant") sued Ford Motor Company ("Ford" or "Appellee"), the manufacturer of her 1991 Lincoln Town Car, claiming that the cruise control system on her Town Car malfunctioned and caused a "sudden acceleration event" that resulted in a single-vehicle accident and Mrs. Jones's paralysis. After a jury verdict for Ford, the district court denied Mrs. Jones's motion for a new trial pursuant to Federal Rule of Civil Procedure 59. Mrs. Jones appeals, asserting that the district court abused its discretion in two respects: first, in admitting into evidence the 1989 Examination of Sudden Acceleration prepared by the National Highway Traffic Safety Administration ("NHTSA"); and second, in refusing to admit the so-called Updegrove Study, a database of consumer complaints catalogued and maintained by Ford. Finding no abuse of discretion in either ruling, we affirm.

I.

This case comes before us after traveling a long and winding procedural path. On the day of the accident, Mrs. Jones and her husband stopped at an Amoco station to fill their Town Car with gas. After Mr. Jones pumped the gas, he went inside the station to pay, leaving Mrs. Jones in the parked Town Car. A gasoline tanker truck pulled up to the front of the Jones' vehicle, and according

- 3 -

to Mrs. Jones's testimony, the truck driver appeared anxious to leave the station.  Mrs. Jones decided to attempt to back her car up to allow the tanker to pass.  She testified that the car started normally, but when she placed it into reverse gear, the engine roared and the vehicle accelerated rearward.  Mrs. Jones further testified that as the vehicle took off, she had her foot on the Town Car's brake pedal.  The car, however, continued to travel rearward across a highway and into a shopping mall parking lot, where it struck a concrete light pole base.  The force of impact threw Mrs. Jones backwards, causing her injuries.

In a lawsuit filed on October 25, 1999 in the Circuit Court of Fairfax County, Virginia, Appellant alleged that a transient electrical signal caused her car's cruise control system to accelerate suddenly and uncontrollably, notwithstanding her applying pressure to the brake pedal, and yet left no physical trace of an electronic or electrical malfunction discernible in an examination of the vehicle after the accident. Appellant presented expert testimony to support this theory.  The jury in the state court action returned a verdict for Ford, and Mrs. Jones appealed to the Supreme Court of Virginia.  See Jones v. Ford Motor Co., 559 S.E.2d 592 (Va. 2002).  Finding that the trial court erred in excluding testimony of four witnesses who had experienced sudden acceleration incidents similar to that alleged by Appellant, the Supreme Court of Virginia remanded for a new trial.  Id. at 263-64.

On remand, Mrs. Jones took a nonsuit and refiled her case in federal court.

Once in federal court, the district court initially granted both Mrs. Jones's motion in limine to exclude the NHTSA report from evidence and Ford's motion in limine to exclude the Updegrove Study. See Jones v. Ford Motor Co., 320 F. Supp. 2d 440, 443 (E.D. Va. 2004). Later, despite stated misgivings regarding the reliability of the NHTSA report, the district court sua sponte modified its earlier order and deemed the NHTSA report admissible at trial, reasoning that the jury ought to be permitted to weigh the NHTSA report's conclusions for itself. Jones v. Ford Motor Co., No. 1:03-CV-319, 2004 WL 3209523, at *1 (E.D. Va. Oct. 18, 2004) (citing Jarvis v. Ford Motor Co., 283 F.3d 33, 53 (2d Cir. 2002), in which the NHTSA report was admissible). The evidence presented at the district court trial was consistent with the evidence in the state court action, including Mrs. Jones's expert's testimony on her theory of sudden acceleration. On November 30, 2004, the jury returned a verdict for Ford. Mrs. Jones then moved for a new trial, arguing that the trial court erred in admitting the NHTSA report while excluding the Updegrove Study, which motion was denied. See Jones v. Ford Motor Co., No. 1:03-CV-319 (E.D. Va. Feb. 24, 2005). Mrs. Jones timely appeals.

In ruling on the admissibility or exclusion of evidence, the district court has broad latitude. See Bryte ex rel. Bryte v. Am.

Household, Inc., 429 F.3d 469, 475 (4th Cir. 2005). As such, we accord the district court's evidentiary rulings substantial deference and may not reverse absent an abuse of discretion. See United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994). A district court abuses its discretion if it acts arbitrarily or irrationally, see id., or if its conclusions are guided by "erroneous legal principles" or rest upon "clearly erroneous factual finding[s]." See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). Guided by these standards, we will consider each of the district court's evidentiary rulings in turn.

## II.

We first consider Mrs. Jones's assertion that the district court abused its discretion in admitting the NHTSA report. Appellant contends in her brief that the report is not relevant and that, although within the public documents exception to the hearsay rule in Federal Rule of Evidence 803(8), it is unreliable and thus should be excluded. Ford responds that the NHTSA report is relevant and that it is a sufficiently reliable government report and therefore admissible under Federal Rule of Evidence 803(8)(C) and this court's decision in Ellis v. Int'l Playtex, Inc., 745 F.2d 292 (4th Cir. 1984).

At oral argument, Appellant's counsel expressly abandoned Mrs. Jones's assignment of error with respect to the NHTSA report. We

nevertheless address the issue on its merits and conclude, as Appellant's counsel apparently now concedes, that the NHTSA report is relevant and is sufficiently reliable such that its admission by the district court was not an abuse of discretion.

A.

Appellant's initial argument that the NHTSA report is not relevant is without merit. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevance is typically a low bar to the admissibility of evidence, even though other Federal Rules of Evidence may otherwise limit such admissibility. See, e.g., Fed. R. Evid. 403 (excluding relevant evidence that is unfairly prejudicial); Fed. R. Evid. 404 (excluding relevant evidence of character for the purpose of showing conduct in conformity therewith). The NHTSA report easily clears the relevance threshold.

The NHTSA report was commissioned in response to increasing numbers of complaints of sudden acceleration in the 1980s. Nat'l. Highway Traffic Safety Admin., An Examination of Sudden Acceleration 1 (1989). The Transportation Systems Center ("TSC") engineers who conducted the two-year investigation concluded that claims of sudden acceleration were not caused by cruise control

defects.    Rather,   the   only   plausible   explanation   for   sudden acceleration incidents when there was no residual physical effect of vehicle malfunction was that these events were caused by the operators' mistaken pedal applications.   Id. at x.    That is, drivers accidentally pressed the gas pedal rather than the brake.

Ford used the NHTSA report at trial for several purposes. First, Ford utilized the report to rebut Appellant's expert's theory of how the accident occurred.   The independent panel of engineers appointed by the federal government concluded that, in cases like Mrs. Jones's where there is no physical evidence of a vehicle malfunction found after the accident, the cause of the incident is most likely pedal error.   Additionally, Appellee's experts testified that the NHTSA report was one factor supporting their conclusions that Mrs. Jones's accident was not caused by a defect in her cruise control system.   For these purposes, the NHTSA report meets the relevancy standard of Federal Rule of Evidence 401, as it tends to make a consequential fact--Mrs. Jones's car's sudden acceleration being caused by vehicle defect in the absence of any physical evidence of such--less probable than without the report.

Appellant in her brief points out that TSC conducted only limited testing of Ford vehicles and that most of its testing occurred on Audi models.   She argues that, for this reason, the report is not relevant.   Appellant's Br. at 34–35.   Appellant's

arguments, though, go to the weight to be accorded the NHTSA report and not to its admissibility.  See Ellis, 745 F.2d at 303-04 ("Playtex's concern about the methodology of the [government] studies should have been addressed to the relative weight accorded the evidence and not its admissibility.")  Of course, it is exclusively the function of the jury to weigh the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Mattison v. Dallas Carrier Corp., 947 F.2d 95, 108 (4th Cir. 1991).  To that end, Mrs. Jones's expert was indeed permitted to testify that TSC engineers only studied one Ford vehicle and to explain his views that the methodology employed by the TSC panel was flawed and the conclusions of the NHTSA report not supportable by the data.  We therefore conclude on these facts that the district court did not abuse its discretion in admitting the NHTSA report and allowing the jury to determine the weight to assign it.

B.

We turn now to Appellant's argument that even though the NHTSA report fits within the hearsay exception for public documents, it is not sufficiently reliable and therefore should be excluded. Federal Rule of Evidence 803(8) states that public records and reports are not excluded by the hearsay rule.  Such admissible public reports include "[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies, setting

forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8). The NHTSA report fits snugly within this exception, and Appellant concedes as much.

However, Appellant argues in her brief to this court that the NHTSA report is not sufficiently trustworthy. Although, as noted above, this contention was abandoned at oral argument, we address its merits and determine that the NHTSA report is sufficiently reliable and that its admission was not an abuse of discretion.

Our analysis is guided by this court's decision in Ellis, in which a widower claimed his wife died as a result of Toxic Shock Syndrome ("TSS") caused by using Playtex tampons. See Ellis, 745 F.2d at 299-305. The district court excluded two studies authored by the Centers of Disease Control ("CDC") and one supervised by three state health departments that tended to show a causal relationship between tampon use and TSS. See id. We found such exclusion improper and ruled the three public reports should have been admitted under Rule 803(8)(C) over a trustworthiness objection from the opponent and that concerns about the studies' methodology should go to the weight of the evidence and not their admissibility. Id. at 300-03.

Rule 803(8)(C) is premised on "the assumption that a public official will perform his duty properly." Id. at 300 (quoting Fed.

R. Evid. 803(8) advisory committee's note).  We presume the admissibility of public reports "because of the reliability of the public agencies usually conducting the investigation and 'their lack of any motive for conducting the studies other than to inform the public fairly and adequately.'"  Id. (citing Kehm v. Proctor & Gamble Mfg. Co., 724 F.2d 613, 619 (8th Cir. 1983)).  But when the opponent of such evidence proves that "sufficient negative factors are present" to bring into doubt the report's trustworthiness, it should not be admitted.  Id. at 300-01 (quoting Fed. R. Evid. 803(8) advisory committee's note).  "[F]actors that may be used to determine admissibility include: (1) the timeliness of the investigation; (2) the special skill or experience of the official; and (3) possible motivation problems."  Id.

Reviewing the record before us in light of Ellis leads us to conclude that the district court did not abuse its discretion in admitting the NHTSA report under the public documents exception. Mrs. Jones has not presented sufficient evidence to carry her burden of rebutting the presumption of admissibility of this public report; indeed, most of her concerns regarding the NHTSA report go to its weight and not its admissibility,[1] and Mrs. Jones was

_____

[1]Appellant argues that the NHTSA report is unreliable because Ford allegedly concealed certain evidence requested by NHTSA about Ford's experience with acceleration-related design issues.  In their briefs, Mrs. Jones and Ford offer contrary accounts of the effect of the testimony of Mr. Edward Richardson, the engineer in Ford's Automotive Safety Office responsible for communication with NHTSA during the sudden acceleration investigation.  However, while

permitted to present evidence tending to impeach the methodology of the NHTSA report's authors and therefore tending to show that the report's conclusions were insufficiently supported.

## III.

Mrs. Jones next contends that the district court abused its discretion in excluding from evidence the results of the Updegrove Study, a collection of nearly 2,900 unsworn consumer complaints of vehicle malfunctions received by Appellee, involving a variety of vehicle models, model years, cruise control systems, and other conditions. Mrs. Jones intended to use the Updegrove Study to establish both causation and notice to Ford of a defect that would cause sudden acceleration, but she also claims that the Updegrove Study should have at least been admitted to rebut the conclusions and to impeach the credibility of the NHTSA report. Ford responds that the district court correctly found the Updegrove Study not relevant on the ground that the incidents described therein were not substantially similar to her accident and alternatively, that the report should be excluded under Federal Rule of Evidence 403.[2]

the allegations that Ford withheld requested information from NHTSA are troubling, even if true they do not render the entire NHTSA report, with its independent and industry-wide investigation, untrustworthy such that its admission was an abuse of the district court's discretion.

[2]Federal Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

We agree with Ford that the district court did not abuse its discretion in either of these alternative findings.

A.

We first examine Appellant's argument that the events chronicled in the Updegrove Study meet the requirements of substantial similarity for other incidents offered to show notice to a defendant.  Under Virginia product liability law, evidence of other allegedly similar incidents is inadmissible to prove product defect or to "corroborate a plaintiff's version of how an accident occurred."  See Jones v. Ford Motor Co., 559 S.E.2d 592, 602 (Va. 2002).  Rather, this evidence is admissible for the limited purpose of proving notice or actual knowledge of an alleged defect.  Id. at 601; see also Blevins v. New Holland N. Am., Inc., 128 F. Supp. 2d 952, 960-61 (W.D. Va. 2001).

Furthermore, evidence of other accidents can be highly prejudicial.  Therefore, the proponent of other similar incident evidence must establish as a threshold matter that such events

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Our determination that the district court did not abuse its discretion in excluding the Updegrove Study because the events described therein could not be proven to be substantially similar to Mrs. Jones's accident is sufficient to affirm the district court's ruling on the Updegrove Study.  However, we note here that we also find no abuse of discretion in the district court's alternative holding excluding the Updegrove Study on Rule 403 grounds.

- 13 -

occurred under substantially similar circumstances as the plaintiff's incident. See Renfro Hosiery Mills Co. v. Nat'l Cash Register Co., 552 F.2d 1061, 1068-69 (4th Cir. 1977); Buckman v. Bombardier Corp., 893 F. Supp. 547, 552 (E.D.N.C. 1995).

Following the rules described above, the Supreme Court of Virginia upheld the exclusion of the Updegrove Study from evidence, see Jones, 559 S.E.2d at 602, and in the present action, the district court granted Ford's motion in limine to exclude the study. Jones v. Ford Motor Co., 320 F. Supp. 2d 440, 443 (E.D. Va. 2004). Both courts pointed to the absence of evidence that the claims mentioned in the Updegrove Study occurred under substantially the same circumstances as Mrs. Jones's accident. Alternatively, the district court found that the Updegrove Study was inadmissible under Federal Rule of Evidence 403, because it had the potential to confuse the jury. Id. at 450.

Notably, the district court denied Ford's motion in limine to exclude *all* evidence of other accidents, incidents, complaints, and lawsuits. Id. at 447-49. To the contrary, Mrs. Jones was permitted to present evidence of four other sudden acceleration incidents where she established that the other accidents proffered involved substantially similar circumstances and alleged defects as Mrs. Jones's accident. Thus for four incidents chronicled in the Updegrove Study, Appellant was allowed to present evidence,

including live testimony, concerning alleged sudden acceleration events.

Appellant nevertheless asserts that *all* of the events listed in the Updegrove Study are similar enough to her accident to meet the substantial similarity requirement for admissibility to show notice and that therefore, the study should be admissible in its entirety. To support this argument, Mrs. Jones points to this court's decision in Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378 (4th Cir. 1995). The plaintiff in that case suffered from liver damage allegedly resulting from combining alcohol with acetaminophen; this court held that the district court's admission of case reports known as Drug Experience Reports ("DERs") regarding complaints to the defendant about the effects of combining alcohol and acetaminophen was not an abuse of discretion. Id. at 1385-86.

We noted in Benedi that the DERs chronicled claims that were sufficiently similar to Benedi's (the same resulting liver damage from the same cause, combining alcohol and acetaminophen), even though in some cases the subject's alcohol history and acetaminophen dosage were unknown. Additionally, in response to the defendant's argument that the Ellis court had found consumer complaints inadmissible, we clarified that our holding in Ellis was "merely ... that the lower court *did not abuse its discretion in excluding prior consumer complaints* under Rule 403." Id. at 1385 (emphasis added). In Ellis and Benedi, although the district

- 15 -

courts reached different conclusions about the admissibility of the consumer complaints at issue, we affirmed in both instances their broad discretion in making the evidentiary rulings.

As Mrs. Jones acknowledges, every court to consider the admissibility of the Updegrove Study with regard to her accident has excluded it. The Supreme Court of Virginia upheld the state trial court's exclusion of the Updegrove Study, because Mrs. Jones could not prove substantial similarity between her accident and the nearly 3,000 incidents catalogued in Ford's record. See Jones v. Ford Motor Co., 559 S.E.2d 592, 602 (Va. 2002). Indeed, the incidents chronicled in the Updegrove Study involve various Ford model vehicles from several model years, including many with entirely different cruise control systems from the one in Mrs. Jones's Town Car and allegedly malfunctioning under widely variant circumstances.

The district court below also considered the issue of similarity between events described in the Updegrove Study and Mrs. Jones's accident. It excluded the study as well. Jones v. Ford Motor Co., 320 F. Supp. 2d 440, 443 (E.D. Va. 2004). Instead of wholesale admission of the Updegrove Study on the issue of Ford's notice, the district court permitted Mrs. Jones to present evidence of specific events, including four listed in the Updegrove Study, for which the court was satisfied Mrs. Jones had demonstrated

substantial similarity with her own accident.  We cannot say that this was an abuse of discretion.

B.

Appellant argues, additionally, that the Updegrove Study should not be examined as a collection of other similar incidents whose admissibility depends upon substantial similarity (or whose purpose at trial must be limited to establishing notice and actual knowledge) but rather as an "epidemiological stud[y] or other survey database."  Appellant's Reply Br. at 1-9.  As support for this proposition, Appellant claims that the Updegrove Study is similar to the CDC and state health department studies that this court declared admissible in Ellis.  See Ellis, 745 F.2d at 299-305.  However, Ellis does not support Mrs. Jones's argument.

As noted above, the CDC and state health department reports in Ellis were both admissible under the public reports exception to the hearsay rule embodied in Federal Rule of Evidence 803(8)(C). Id.  However, in Ellis we also affirmed the district court's exclusion of consumer complaint reports received by Playtex on Rule 403 grounds.  Id. at 305.  The Updegrove Study, in contrast to the government studies admissible in Ellis and the NHTSA study admitted by the district court here, is a private company's unreviewed investigation of consumer complaints logged into a spreadsheet and collated.  As such, it is far more akin to the consumer complaint

- 17 -

reports the exclusion of which the <u>Ellis</u> court upheld.  Therefore, the district court did not abuse its discretion in refusing to admit the Updegrove Study in its entirety without any showing that the events described therein were substantially similar to Mrs. Jones's accident.[3]

## IV.

In conclusion, we hold that the district court did not abuse its discretion either in admitting the NHTSA report into evidence or in excluding the Updegrove Study.  Therefore, we affirm the judgment of the district court.

<u>AFFIRMED</u>

---

[3]When asked at oral argument whether he knew of any case in which a district court's exclusion of a database of consumer complaints where no showing of substantial similarity with respect to each event therein could be shown was overturned, Appellant's counsel answered in the negative.